IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **VICKY L. DOTSON** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:08-CV-0239-KOB |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| **Defendant** | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Vicky L. Dotson, protectively filed applications under Title II for a period of disability and Social Security Disability Insurance benefits, and under Title XVI for Supplemental Security Income on January 5, 2005. (R. 91-95, 96). The claimant alleged disability beginning on September 2, 2004, caused by an irregular heartbeat, allergies, knee swelling, high blood pressure, and hammertoe. (R. 91, 146). The Commissioner denied these claims initially on June 16, 2005, and the claimant requested a hearing before an administrative law judge. The ALJ held a hearing on November 1, 2006. (R. 317). In a decision dated February 13, 2007, the ALJ denied the claimant's application for disability benefits. (R. 18-27). The Appeals Council declined to grant review of the ALJ's decision by form denial on December 10, 2007. (R. 5-8). This denial constituted the final decision of the Commissioner of Social Security. The claimant has exhausted her administrative remedies, and the court has jurisdiction

1

under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below, the court will AFFIRM the Commissioner's decision.  The court will file a separate order to that effect simultaneously.

## II. Issues

Claimant presents the following issues for review: (1) whether the ALJ failed to properly include all of the claimant's severe impairments, and (2) whether the ALJ failed to properly consider the evidence provided by the treating physician, Dr. Francis.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*.  The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look

only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above question leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)

(emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). However, the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good clause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). "Good cause" has been found to exist where the doctor's opinion was not bolstered by the evidence or the evidence supported a contrary finding. *See Schnoor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfarz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987). "Good cause" has also been found where the treating physician's opinion were wholly conclusory or inconsistent with their own medical records. *See Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Crawford v. Commissioner*, 363 F.3d 1155, 1160 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

**V. Facts**

The claimant was born in 1952 and was fifty-four years old at the time of the hearing before the ALJ. The claimant has a twelfth grade education. (R. 151). She has two children, one of which is in prison. (R. 325). The claimant was on probation for two years for a drug charge. (R. 325). Her past work experience includes: cashier/cook in various fast food restaurants and grocery stores, housekeeper, and presser. (R. 147). The claimant alleges disability beginning on

September 2, 2004, with an irregular heartbeat, allergies, knee swelling, high blood pressure, and hammertoe. (R. 91, 146). The claimant has not engaged in substantial gainful activity since September 2, 2004. (R. 20).

The claimant visited Dr. Joseph R. Dupper, a podiatrist at the Alabama Foot Clinic for treatment of bunions and a rash on October 23, 2003. (R. 173). Dr. Dupper recommended surgery to prevent further foot deformity of hammertoe and bunions, and he advised wider shoes and icing the claimant's feet. (R. 174).

On January 7, 2005, the claimant went to The Heart Center and saw Dr. James D. Murphy. (R. 184). Dr. Murphy performed an evaluation of the claimant's past medical history and a physical exam, which revealed heart palpitations and shortness of breath. (R. 184-85). Other than these conditions, the rest of the physical examination was normal. (R. 185). On January 31, 2005, Dr. Murphy noted that the claimant had a normal carotid ultrasound, echocardiogram, and stress test. (R. 182-183).

The records from the Community Free Clinic reflect that various doctors saw the claimant from February 2005 to August 2006 for symptoms including back pain, leg and ankle pain, muscle spasms, shortness of breath, dizziness, and anxiety/depression. (R. 187-90, 230-34, 285-88). On March 1, 2005, the claimant visited the clinic and reported stress related to her son's imprisonment, but the clinic physicians noted no abnormal affect. (R. 189). On March 8, 2005, the claimant visited the clinic for blood analysis, which reported the claimant's triglycerides/cholesterol was within normal limits. (R. 181).

On March 10, 2005, the claimant visited Dr. David Francis, who specializes in Family Practice at the Community Free Clinic, for a physical examination, which revealed nothing

remarkable or abnormal. During the visit, Dr. Francis filled out a form for the State of Alabama's Department of Human Resources Food Stamp Program. Taking into account the claimant's normal physical results and her own complaints of pain, Dr. Francis indicated on the form that the claimant was not mentally and physically able to work due to depression, back pain, and anxiety. (R. 186). On March 17, 2005, Dr. Francis saw the claimant again for back pain, leg pain, and foot pain. (R. 186-90). Dr. Francis noted muscle spasms over the thoracic spine, but the rest of the physical examination was normal. (R. 187).

On April 1, 2005, Dr. Marlin Gill, who specializes in Family Practice, performed a consultative disability exam on the claimant who complained of anxiety and depression. (R. 191). During the examination, Dr. Gill noted the claimant's appearance: unassisted walking without devices, a normal gait, use of arms and hands normally with no limitations, and full range of motion in the joints. (R. 192). The claimant complained of pain with knee and ankle movement to Dr. Gill; however, Dr. Gill found that the feet and ankles looked normal with normal movement. (R. 192). Dr. Gill noted that the claimant appeared alert and oriented, but also depressed with no significant emotion during the interview. (R. 193). Dr. Gill diagnosed the claimant with chronic anxiety and depression, chronic low back pain, and chronic bilateral knee and lower extremity pain. (R. 193). Dr. Gill noticed that the claimant's lungs were clear and that the heart showed no murmur, gallop, or rub. (R. 191). Dr. Gill noted that the claimant's legs looked normal and symmetrical with good muscle tone; the knees showed no visible deformities, swelling, or joint effusion; the ankles and feet were normal; and the legs were neurovascularly intact. (R. 192).

On May 2, 2005, Dr. Barry S. Wood, a licensed clinical psychologist, conducted a

consultative mental examination of the claimant as required by the Social Security Administration. (R. 194). During the examination, the claimant stated that she first received psychiatric treatment during the past year when claimant states a cardiologist at the Moulton Emergency Room attributed her episodes of irregular heartbeat and dizziness to anxiety. (R. 195). The claimant discussed with Dr. Wood her lack of money, the fact that her imprisoned son had been stabbed on two occasions, and that she had "panic" episodes that lasted about thirty minutes. (R. 195). The claimant also reported that she was arrested for attempting to smuggle marijuana to her son in jail seven years prior, but she denied any other legal complications. (R. 195).

Dr. Wood stated he determined the "veracity of the claimant's report to be lower than average" and that "some amount of malingering is suspected with respect to intelligence." (R. 196, 197). Dr. Wood also determined that her test results suggested that her estimated IQ falls within the average range. (R. 196). Dr. Wood diagnosed the claimant with mild depressive disorder with anxiety in partial remission, panic disorder without agoraphobia in partial remission, and intellectual malingering. (R. 197). Also, Dr. Wood found during the consultative examination no significant limitations of the claimant's mental function, except for a moderate limit on her ability to understand and remember detailed instructions. (R. 25, 196). Dr. Wood also diagnosed the claimant with a Global Assessment of Functioning ("GAF") score of 62. (R. 197). A GAF score of 62 indicates only some mild symptoms, or some difficulty in social, occupational, or school functioning, but generally functioning very well. *Diagnostic & Statistical*

*Manual of Mental Disorders*, 34 (4th Ed. 2000, Text Rev.) (DSM-IV-TR).[1]

On June 6, 2005, psychologist Dr. Dale Leonard performed a psychiatric review of the claimant. (R. 198). Dr. Leonard performed a Functional Capacity Assessment. In his assessment, Dr. Leonard found: the claimant can understand, remember and carry out short and simple instructions/tasks, but not those more detailed or complex; claimant can maintain attention sufficiently to complete simple tasks without the need for special supervision or more than usual customary rest breaks; claimant can tolerate non-intense interaction with co-workers, supervisors, and the public; supervision should be tactful and supportive; changes in the work environment or in work expectations should be introduced gradually; claimant can set simple, short-term, realistic work goals; and claimant will need assistance with those more long-term and complex goals. (R. 215).

On March 16, 2006, the claimant sought treatment at Community Free Clinic, and the clinic doctors diagnosed the claimant with arrhythmia, transient ischemic attacks ("TIAs"), and possible strokes. (R. 229, 288). The claimant did not complain of dizziness, and the physical examination had no significant abnormal findings. (R. 288).

On March 31, 2006, the claimant visited Dr. Ashish K. Basu, a specialist in cardiology and internal medicine, at The Heart Center. Dr. Basu reported that the claimant was doing well; that she did not complain of chest pain, shortness of breath, orthopnea (inability to breath unless in an up-right or standing position), or paroxysmal nocturnal dyspnea (sudden, severe shortness

---

[1] However, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50764-65 (Aug. 21, 2001)).

of breath at night); and that the physical examination was normal. (R. 236).

On July 25, 2006, the claimant visited Dr. V.S. Hurst, a diagnostic radiologist, at Decatur General Hospital, for back pain and ankle pain. (R. 284). Dr. Hurst detected a calcaneal bone spur in the claimant's ankle, but also noted good alignment of the lumbar spine, no compression of vertebra, no subluxations, and no degenerative changes. (R. 284). The claimant also received an injection of the pain medication Toradol for right anklebone spurs and back pain. (R. 280-82).

During a physical therapy prognosis evaluation on August 1, 2006, the claimant claimed to have swelling in her right ankle and leg accompanied by tingling. (R. 286). The examination revealed that her extremities had only trace edema and that the claimant's lungs were clear (R. 286). The claimant also had her pain medications refilled. (R. 286).

The ALJ held a hearing on November 1, 2006. (R. 318). During this hearing the claimant testified to her alleged disabilities including: depression and anxiety, chronic pain in her back and ankles, high blood pressure, hammertoes on both feet, varicose veins, carcinoma in her left breast which resulted in a radical mastectomy, and TIAs. (R. 320- 24). The claimant testified about the stress related to her son's imprisonment and the weight gain that she attributes to that stress. (R. 324). She testified concerning her probation for attempting to smuggle drugs into the jail to her son. (R. 325). The claimant stated that she was not attending any mental health treatment. (R. 328). She testified that once a year she would go to The Heart Center, where she saw Dr. Murphy and received a prescription for Atenolol for her high blood pressure. (R. 329). She stated that she also went to Baptist Medical Center for treatment, where a Dr. Igbot told her that she had an irregular heartbeat. (R. 330). The claimant asserted that she did not go back to Dr. Igbot for treatment due to financial difficulties. (R. 330).

Next, the claimant testified concerning her dizzy spells and the treatment that followed. (R. 330-334). She stated that she has a family history of strokes and heart attacks, so she gets regular yearly examinations related to the history of those conditions. (R. 331). The claimant stated that she could not remember if she discussed her shortness of breath with any of her physicians, but that she experienced shortness of breath whenever she received bad news or had an anxiety attack. (R. 333).

The claimant testified as to the pain and arthritis she experienced. (R. 334-335). She testified that her back hurt just from sitting through the hearing and that every few minutes she has to move around. (R. 334-335). The claimant testified that she had a "touch of arthritis in her back." (R.335). She also claimed to have arthritis in her ankles with hammertoe, which radiated pain from her toes to her ankles. (R. 335). Additionally, the claimant asserted that varicose veins and a popping knee contributed to her pain. (R. 337). The claimant testified that she has trouble walking and can walk only about a block. (R. 341).

Further, the claimant testified concerning her financial situation and her driving. The claimant received $155 of food stamps a month. (R. 338). She also received $100 a month in back child support. (R. 338). She testified that she had not driven since her mastectomy, because she was now nervous about driving. (R. 338). However, she also testified that when she did drive she could only drive a couple of blocks to a fast food restaurant or to the store. (R. 339).

Next, the claimant's attorney questioned the claimant about her lifestyle. The claimant stated that she had trouble sleeping at night sometimes. (R. 343). She stated that her son had helped her clean her apartment, because she was unable to do it. (R. 345). She stated that she would cook food that could be made quickly in the microwave. (R. 343). The claimant testified

that she ate a lot of fast food, which she claimed was probably responsible for her weight gain of 40 pounds. (R. 344). The claimant stated that she gained a lot of the weight after she quit work because of her alleged disability. (R. 344-45). When asked what she does during the day since quitting her job, the claimant stated that she mostly laid around watching TV, because she stayed with her niece who helped her. (R. 345). She testified that she had no problem going into a store, but she would have anxiety attacks when in crowds. (R. 348).

A vocational expert ("VE"), Patsy Bramlett, also testified at the hearing. (R. 353). She testified concerning the claimant's work history. (R. 353). She described the claimant's past work experience as presser (classified as a light job unskilled), housekeeper (classified as a light job unskilled), and a fast food worker (classified as a light job unskilled). (R. 353-54). The ALJ then asked the VE several hypothetical questions to discern the employment options available for the claimant. (R. 354-56). The VE testified the claimant's prior work as a presser, housekeeper, and fast food worker would not be precluded to an individual with the claimant's age, education, and past relevant work experience, and with a mild restriction in activities of daily living, moderate restriction in social functioning, and a moderate restriction in concentration, persistence, and pace. (R. 354-55). Also, the VE testified that a limitation to light work would not preclude an individual with the above limitations from performing those jobs. (R. 355). However, the VE stated if the claimant had to periodically leave her work station for extra, unannounced work breaks on a frequent basis, she would be precluded from these jobs. (R. 358). Also, missing more than two days of work on a monthly basis would preclude the claimant from employment in unskilled work. (R. 359).

On February 17, 2007, the ALJ determined that the claimant was not disabled under the

Social Security Act. (R. 27). The ALJ found that the claimant met the insured status requirements of the Social Security Act on September 2, 2004, and, at least through the date of the decision, had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that the claimant has severe impairments of severe obesity, depression/anxiety, and a recent mastectomy in October 2006. (R. 20). The ALJ stated that she had been diagnosed with mild cardiac arrhythmia, but that the record contained "no evidence that it has even a minimal effect upon her ability to work." (R 20). He found that other diagnoses of elevated cholesterol and thoracic back pain of unclear origin had not been noted to result in any limitations by any physicians. (R. 20).

   The ALJ determined that the "claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 21). The ALJ found that the claimant had the residual functional capacity ("RFC") to perform the exertional and nonexertional activities of light work. He found that "as a result of her mental impairments, she has mild restriction of activities of daily living, moderate difficulty with social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no history of episodes of decompensation of extended duration." (R. 21). Taking into account her mild mental limitations, the ALJ determined that the claimant could be expected to perform the requirements of her past relevant work experience, because her past work experience does not require the performance of work-related activities precluded by the claimant's RFC. (R. 26). The ALJ, therefore, concluded that the claimant was not disabled within the meaning of the Social Security Administration.

## VI. Discussion

**A. The ALJ properly applied the evaluation process at step two.**

The ALJ determined that the claimant has severe impairments of severe obesity, depression/anxiety, and a recent mastectomy. The claimant argues that the ALJ failed to properly apply the sequential evaluation process at step two by not including the back pain, leg pain, and foot pain in the list of severe impairments. At step two, the ALJ must find whether the claimant's impairment is "severe" or a combination of her impairments is "severe." According to 20 C.F.R. §§ 404.1512 and 416.92, an impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

The ALJ did find in the claimant's favor at step two of the evaluation process by determining that the severe obesity, depression/anxiety, and a recent mastectomy were severe impairments. "[I]f no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). After determining that the claimant did have these severe impairments, the ALJ proceeded with the other steps of the sequential evaluation process.

The court finds that the record contains substantial evidence to support the ALJ's determination that the claimant's alleged back, leg, and foot pain were not severe impairments and would have no more than a minimal effect on the claimant's ability to work. In evaluating

13

pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

The ALJ determined that the claimant did not show any objective medical evidence to confirm the severity of the alleged pain. The ALJ specifically determined that the claimant's back, leg, and foot pain would only have the following minimal effects on the claimant's life: arthritis in her back, wearing soft shoes because of hammertoe, worsening pain when it rains or when she walks a lot, and having varicose veins with pain in her right leg.

The ALJ noted that the claimant frequently sought medical treatment for back and leg pain. The ALJ specifically noted that, on October 23, 2003, the claimant visited Dr. Joseph R. Dupper, a podiatrist, and complained of painful bunions and a rash on her left foot. Dr. Dupper recommended surgery and wearing wider shoes. In an appointment on March 17, 2005, Dr. David Francis noted thoracic muscle spasms, which were the only positive findings during the examination. Neither Dr. Dupper nor Dr. Francis indicated that the bunions or muscle spasms, respectively, would objectively be suspected to limit her ability to work or care for herself.

Additionally, the ALJ focused on the consultative examination Dr. Marlin Gill performed on April 1, 2005. During the examination, the claimant complained of low back pain, knee pain, and ankle pain. However, Dr. Gill noted that the feet and ankles looked normal with normal movement; the legs looked normal and symmetrical with good muscle tone; the knees showed no

visible deformities, swelling, or joint effusion; and the claimant could walk unassisted and had a full range of motion in her joints. Between March 1, 2005, through March 10, 2005, the claimant returned to the Community Free Clinic for other examinations and received diagnoses of hypertension, elevated cholesterol, depression/anxiety, and chronic low back pain. However, her physical examination findings were normal. The ALJ, thus, determined that Dr. Gill made no objective findings that would indicate the severe pain as alleged by the claimant.

The ALJ also noted the claimant's July 25, 2006, visit to the emergency room with complaints of low back, right knee, and right ankle pain. The emergency room physician noted that "right ankle x-rays revealed a bone spur off the inferior calcaneus, and lumbar spine x-rays were interpreted as negative." (R. 24). On September 12, 2006, the claimant had another emergency room visit for complaints of low back and right foot pain. A positive examination was noted, and claimant received a referral to her regular physician. The claimant returned on September 22, 2006, again complaining of mid and lower back pain on the left. She received a diagnosis of acute myofascial strain. The emergency room physicians discharged the claimant immediately and made no note that she would be incapacitated by any of her symptoms or alleged pain.

Considering the limited objective findings supporting the claimant's complaints of debilitating pain, and the inconsistent objective findings of her many normal physical examinations, the ALJ found that "the objective medical evidence does not confirm the severity of the claimant's alleged symptoms arising from the diagnosed condition." (R. 24).

Despite the frequent visits to the medical facilities, the ALJ found that the record reflects no impairment or symptom that would preclude her from working in her previous work

experience. When applying the pain standard the ALJ found that the record showed no objective medical evidence that confirmed the severity of the alleged symptoms of back pain nor any objective evidence of a condition that would reasonably be expected to produce the level of pain or depression that the claimant alleges. The ALJ determined that the claimant's pain was no more than moderate with medication. He also found no evidence in the record to show that she has any physical limitations inconsistent with a full range of light work. When considering the record as a whole, the ALJ determined that none of the treatment the claimant received for her alleged pain was related to a "severe" impairment. After considering the objective findings noted by the physicians, the treatment received, the claimant's daily activities described, and the diagnoses given, the ALJ concluded that the objective evidence does not confirm the severity of the claimant's alleged symptoms or that those conditions could reasonably be expected to give rise to the symptoms alleged.

This court finds that the ALJ properly applied the pain standard, that the ALJ properly considered the record as a whole, and that the ALJ's conclusion is based on substantial evidence.

**B. The ALJ properly considered testimony from the treating physician, Dr. Francis.**

Further, the claimant alleges that the ALJ failed to properly consider the testimony of Dr. Francis, the claimant's treating physician. On March 10, 2005, Dr. Francis determined that the claimant would be incapable of performing work activities because of severe and debilitating impairments, including depression, back pain, and anxiety. The ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician <u>unless</u> good causes exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The

Eleventh Circuit has found "good cause" where the treating physician's opinions were wholly conclusory or inconsistent with his/her own medical records. *See Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The ALJ noted that Dr. Francis's record showed objective findings of a normal physical examination and no findings of abnormalities or injury. The ALJ then concluded that Dr. Francis's determination that the claimant could not work was based on the claimant's own complaints, because such a determination would be inconsistent with his normal physical examination reports.

"The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ recognized that Dr. Francis was a treating physician and so entitled to deference. However, the ALJ also found that Dr. Francis's opinion was inconsistent with the medical records as a whole. For example, the ALJ found that Dr. Francis's opinion was inconsistent with that of Dr. Gill, another treating physician. During an examination on March 1, 2005, Dr. Gill noted the claimant's appearance: unassisted walking without devices, a normal gait, use of arms and hands normally with no limitations, and a full range of motion in the joints. The claimant complained of pain with knee movement; however, Dr. Gill found, despite the claimant's complaints of plain with knee movement, that the feet, ankles, and legs looked normal with normal movement. Dr. Gill's physical examination had no significant abnormal findings. The ALJ also found that Dr. Francis's opinion was inconsistent with the findings of Dr. Basu, another treating physician. On March 31, 2006, Dr. Basu, reported that the claimant was doing well, did not complain of chest pain, and the physical examination was normal.

Further, the ALJ considered the claimant's testimony about her daily activities in determining whether her complaints of leg, back, and foot pain were credible. The ALJ found that the claimant was able to drive occasionally, demonstrating an "ability to perform sequential postural movements to enter and exist a vehicle, and to sit. Driving is also consistent with the ability to use her hands, operate some hand and foot controls and exercise appropriate judgment." (R. 25). The ALJ found that the claimant's daily activities were consistent with Dr. Wood's findings during the consultative examination on May 2, 2005, that the claimant had no significant limitations, except for a moderate limit on the claimant's ability to understand and remember detailed instructions. Furthermore, the ALJ agreed with Dr. Wood's suspicion that the claimant had questionable motivation and may be even malingering in describing her symptoms to him, further bringing the claimant's credibility into question. The ALJ adopted the opinion of the psychological consultant, Dr. Wood, when determining the residual functioning capacity. Because Dr. Francis's medical opinion was inconsistent with the objective medical records and the record as a whole, the ALJ gave the opinion little weight and provided specific reasons for doing so.

The court finds that the ALJ clearly articulated good cause for discounting Dr. Francis's opinion. This court concludes, therefore, that the ALJ did not commit reversible error in weighing Dr. Francis's opinion in light of the medical record as a whole.

### VII. Conclusion

Having found that the ALJ properly evaluated the claimant's impairments and properly gave little weight to the claimant's treating opinion, the court finds that substantial evidence supports the Commissioner's opinion. The court will AFFIRM the Commissioner's opinion in a

separate order.

DONE and ORDERED this the 15th day of August, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE